**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JOHNNY A. JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:23-cv-00845-MTS |
| ) | |
| DAVID VANDERGRIFF, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

Twenty-one years ago this month, Petitioner Johnny Johnson took six-year-old Casey Williamson to a concrete pit in an abandoned factory where he attempted to forcibly rape her. After pulling down his pants and exposing himself to her, Johnson tore Casey's underwear off her and forced her to the ground. Johnson pinned her to the ground while he rubbed his penis on her leg. Casey resisted Johnson's sexual predation, scratching Johnson's chest. Johnson then grabbed a brick and struck Casey in the head at least six times. Casey continued to try to get away from Johnson, even after she could no longer walk. As she tried to crawl away, Johnson continued to strike her with the brick, eventually fracturing her skull. Casey continued to move. Johnson then lifted a boulder over his head and brought it down on Casey's head and neck, killing her. Johnson left Casey's body in the pit, covering much of it with rocks, leaves, and other debris. He left the abandoned factory and washed himself of Casey's blood in the Meramec River.

Shortly thereafter, Johnson confessed to his crimes, and, at his jury trial, he did not deny killing Casey. Rather, he maintained that he had not deliberated before doing so. *See* Mo. Rev. Stat. § 565.020 (codifying first degree murder as "knowingly caus[ing] the death of another

person after deliberation upon the matter"). He asserted a diminished capacity defense, arguing that his mental illness—specifically schizoaffective disorder that, he said, caused command hallucinations to rape and kill Casey—prevented him from deliberating. The jury rejected the defense and convicted Johnson of first-degree murder, along with armed criminal action, kidnapping, and attempted forcible rape. Not only did the jury reject Johnson's defenses and arguments regarding his mental illness in the guilt phase of the trial, it also rejected them in the penalty phase. For the murder conviction, the jury recommended a sentence of death, having found the statutory aggravating circumstances that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind and further finding that Johnson committed the murder while engaging in the offenses of kidnapping and attempted forcible rape. The trial court sentenced Johnson to death.

On appeal, the Supreme Court of Missouri[1] unanimously affirmed Johnson's conviction and death sentence in a lengthy opinion. *State v. Johnson*, 207 S.W.3d 24 (Mo. banc 2006). And with no noted dissent, the Supreme Court of the United States denied Johnson's petition for writ of certiorari. *Johnson v. Missouri*, 550 U.S. 971 (2007). Johnson then sought post-conviction relief under Missouri law. *See* Mo. R. Crim. Pro. 29.15. After holding an evidentiary hearing, the motion court overruled Johnson's motion in its entirety. The Supreme Court of Missouri unanimously affirmed the motion court's denial of post-conviction relief. *Johnson v. State*, 388 S.W.3d 159 (Mo. banc 2012).

Johnson next sought federal habeas relief under 28 U.S.C. § 2254. His requests were denied at every stage. *Johnson v. Steele*, 4:13-cv-00278-HEA, 2020 WL 978038 (E.D. Mo. Feb. 28, 2020) (denying, in a fifty-one-page opinion, Johnson's Petition for Writ of Habeas Corpus

---

[1] Because the trial court sentenced Johnson to death, the Supreme Court of Missouri had exclusive jurisdiction of his appeal. Mo. Const. art. V, § 3. As such, the Missouri Court of Appeals did not review Johnson's case.

and declining to issue a certificate of appealability); *id.*, 2020 WL 5760742 (E.D. Mo. Sept. 28, 2020) (denying Johnson's subsequent Motion to Alter or Amend Judgment Pursuant to Rule 59(e) and again declining to issue a certificate of appealability); *Johnson v. Blair*, No. 20-3529, 2022 WL 2032929 (8th Cir. Jan. 21, 2022) (denying Johnson's application for certificate of appealability); *Johnson v. Blair*, 143 S. Ct. 430 (2022) (denying Johnson's petition for writ of certiorari).

With Johnson's post-conviction challenges complete, the Supreme Court of Missouri, on April 19, 2023, issued a warrant for Johnson's execution, setting his execution date for August 01, 2023. On May 16, 2023, Johnson filed a petition for a writ of habeas corpus in the Supreme Court of Missouri claiming his execution would violate the Eighth and Fourteenth Amendments to the United States Constitution because he is incompetent to be executed under the standard set by the Supreme Court of the United States in *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Ford v. Wainwright*, 477 U.S. 399 (1986). In his petition, Johnson claimed he lacks a rational understanding of his punishment and genuinely believes the true purpose of his execution is to do Satan's bidding and bring about the end of the world. He sought a writ prohibiting his execution and requested that the Supreme Court of Missouri appoint a special master to conduct an evidentiary hearing on his incompetency claim. The Supreme Court of Missouri concluded Johnson did not demonstrate the "substantial threshold showing of insanity required by *Panetti* and *Ford*," and it therefore denied his petition for writ of habeas corpus without conducting an evidentiary hearing. *State ex rel. Johnson v. Vandergriff*, 668 S.W.3d 574, 579 (Mo. banc 2023).[2]

---

[2] Five other Members of the Supreme Court of Missouri concurred in Judge Russell's opinion denying Johnson's petition for a writ of habeas corpus; one Member dissented without opinion.

Johnson's Petition presently before this Court seeks review of the Supreme Court of Missouri's denial of his petition. Pursuant to 28 U.S.C. § 2254(d), Johnson must show that the Supreme Court of Missouri's decision was "contrary to, or involved an unreasonable application of,[3] clearly established Federal law, as determined by the Supreme Court of the United States" *or* that the Supreme Court of Missouri based its decision "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This "highly deferential standard" is "difficult to meet," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and this Court concludes Johnson has not met it.

### Whether the Decision was Contrary to or Involved an Unreasonable Application of Clearly Established Federal Law

<u>Contrary to Clearly Established Federal Law</u>

"A decision is contrary to federal law if it (1) contradicts a rule set forth in the Supreme Court's cases or (2) confronts a set of 'materially indistinguishable' facts and arrives at a different result." *Dansby v. Payne*, 47 F.4th 647, 655 (8th Cir. 2022), *cert. denied*, 599 U.S. ---, No. 22-7222, 2023 WL 3937655 (U.S. June 12, 2023) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). It is difficult to pin down Johnson's argument here. *See* Doc. [20] at 13 n.4 (noting Johnson did not analyze the "contrary to" and "unreasonable application of" prongs independently). But the Court does not see anywhere where Johnson put forward a rule set forth in a case from the Supreme Court of the United States that the Supreme Court of Missouri's decision here contradicts. *See generally* Doc. [3] (using "rule" eight times but never in the context of actually providing one). Johnson seems to argue, though, that the Supreme Court of

---

[3] The "contrary to" and "unreasonable application" clauses have independent meaning. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). Thus, Johnson need only show that the Supreme Court of Missouri's decision was either (1) contrary to clearly established Federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. *Id.* at 404–05.

Missouri's decision confronted a set of "materially indistinguishable" facts from *Panetti* and from *Madison v. Alabama*, 139 S. Ct. 718 (2019), and arrived at a different result. Doc. [3] at 48, 51. His argument misses the mark. *Panetti* is materially distinguishable, and, as for *Madison*, Johnson altogether misstates its holding.

In *Panetti*, no party disputed that the petitioner made a substantial threshold showing of insanity. 551 U.S. at 950. The Supreme Court of Missouri's decision in this matter confronted parties disputing whether Johnson had made a substantial threshold showing of insanity. In *Panetti*, the petitioner made a substantial showing, in no small part, by including "pointed observations" from two experts on the day before the petitioner's scheduled execution. *Id.* Here, Johnson provided *one* expert's opinion from *five months* before Johnson's scheduled execution. Further, unlike in *Panetti*, Missouri provided an affidavit from the institutional chief of mental health where Johnson is incarcerated, who had evaluated Johnson more recently *and* had met with him over a longer period of time. To the extent cases dealing with the review of a prisoner's mental health records and experts' opinions on a prisoner's mental health can ever be "materially indistinguishable" based on the number of experts alone, *Panetti* is not materially indistinguishable to this case.[4]

In *Madison*, the Supreme Court held that the Eighth Amendment does *not* forbid the execution of a prisoner who shows that a mental disorder has left him without any memory of committing his crime and that the Eighth Amendment's prohibition on executing a prisoner who cannot rationally understand the reason for his punishment applies regardless of whether that lack of rational understanding stems from dementia or psychotic delusions. 139 S. Ct. at 722. The Court then decided that it would leave to the state court to determine what those rulings

---

[4] Johnson appears to argue that if two cases have the same number or type of experts on competency, then they are materially indistinguishable. The Court disagrees it is that simple.

meant for the petitioner's execution because there was some reason to think the state court accepted Alabama's argument that *Ford* and *Panetti* extended only to prisoners who suffer from psychotic delusions. *Id.* at 722, 730–31. So, contrary to Johnson's claim, the Supreme Court in *Madison* in no way ruled that the petitioner's evidence—a letter and declaration from a psychologist and a law professor—was "sufficient to establish a prima facie case of incompetency." Doc. [3] at 51.[5]

Unreasonable Application of Clearly Established Federal Law

"A decision unreasonably applies federal law if the 'state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" *Dansby*, 47 F.4th at 656 (quoting *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016)). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)); *accord Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010) (explaining that a state court decision "may be incorrect, yet still not unreasonable" such that relief is appropriate "only if the state court decision is both incorrect *and* unreasonable"). Thus, to support his claim that the Supreme Court of Missouri unreasonably applied clearly established federal law, Johnson must show that its ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). He has not done so.

---

[5] As noted in footnote four, merely having the same number or type of experts as another case does not necessarily make a case materially indistinguishable. In any event, the facts of *Madison* and this case indeed are distinguishable in that Missouri provided an affidavit here that undercut Johnson's expert's opinion.

Johnson argues that the Supreme Court of Missouri's decision denying him "a fair hearing to assess his incompetence and finding he did not meet the required 'substantial threshold' to show incompetence, while at the same time making credibility determinations and resolving factual disputes, was contrary to and an unreasonable application of the clearly established federal law set forth in *Ford* and *Panetti*." Doc. [3] at 49–50; *accord id.* at 48–49. Precedent binding on this Court indicates otherwise.

When Andre Cole challenged his competency to be executed, the Supreme Court of Missouri weighed the evidence before it and concluded that even if it "assum[ed]" Cole made "a substantial threshold showing of insanity," Cole "[wa]s not entitled to any further process under *Ford* and *Panetti* because he ha[d] been afforded the opportunity to submit argument and evidence, including expert psychiatric evidence, and to reply to the evidence submitted by the state." *State ex rel. Cole v. Griffith*, 460 S.W.3d 349, 362 (Mo. banc 2015). Cole filed his federal habeas petition with respect to the Supreme Court of Missouri's decision, which is equivalent to Johnson's Petition now before this Court, and a Judge of this Court concluded "that the state court's decision not to hold a hearing was an unreasonable application of *Ford* and *Panetti*." *Cole v. Griffith*, 4:05-cv-00131-CDP, 2015 WL 1636429, at *5 (E.D. Mo. Apr. 13, 2015) (noting agreement with the petitioner that the Supreme Court of Missouri "improperly combined the issue of a threshold showing with improper fact-finding on the ultimate issue"). The United States Court of Appeals for the Eighth Circuit disagreed. *Cole v. Roper*, 783 F.3d 707 (8th Cir. 2015) (reversing the district court and vacating the court's stay of execution).

The Court of Appeals for the Eighth Circuit concluded that "it was not an unreasonable application of *Ford* or *Panetti*" when the Supreme Court of Missouri "reach[ed] the merits of Cole's incompetency claim without a more formal hearing." *Id.* at 711 (Beam, J., for the Court);

*accord id.* at 713 (Gruender, J., joined by Beam, J., concurring) ("It was not an unreasonable application of *Ford* and *Panetti* for the Supreme Court of Missouri to reach the merits of Cole's competency claim on the basis of Cole's submissions, the state's response, and Cole's reply."). Here, Johnson received the exact same process that Cole received; Johnson provided the Supreme Court of Missouri his submissions, the state responded, and he replied. Although Johnson may take issue with the Supreme Court of Missouri's factual determinations, it is puzzling how, in light of *Cole*, he can take issue with the court's process.

If the Court of Appeals for the Eighth Circuit has determined that it was not an unreasonable application of *Ford* and *Panetti* for the Supreme Court of Missouri to reach the merits of a competency claim on briefing alone, it is beyond this Court's grasp how it could be an unreasonable application of *Ford* and *Panetti* for the Supreme Court of Missouri to reach the threshold question on briefing alone. How could it be an unreasonable application of *Ford* and *Panetti* for the Supreme Court of Missouri to weigh evidence or determine credibility in its consideration of whether a petitioner has met the threshold showing of insanity when the Court of Appeals for the Eighth Circuit has determined the Supreme Court of Missouri could weigh evidence and determine credibility for the merits of a competency claim?

What is the difference between weighing evidence or determining credibility, then explicitly concluding that a petitioner has failed to make a threshold showing of insanity versus assuming a petitioner has made a threshold showing of insanity and then weighing the very same evidence obtained via the very same process? Johnson, at least at times, seems to agree there is no difference. Doc. [3] at 52 (arguing the Supreme Court of Missouri "decided the competency issue on the merits"). The only difference between what the Supreme Court of Missouri did with Johnson's petition and what it did in *Cole* is that, in *Cole*, based on all the evidence and briefing,

it assumed Cole made a substantial threshold showing of insanity but concluded Cole did indeed rationally understand his sentence. *See State ex rel. Cole v. Griffith*, 460 S.W.3d 349, 362 (Mo. banc 2015) (Stith, J., dissenting) (describing what the majority did as "simply" taking the evidence Cole presented to support his threshold showing "and us[ing] that evidence to make credibility determinations as to whom to believe and whose reports are entitled to more weight in the first instance and then itself decide the ultimate factual issue of whether Mr. Cole is incompetent"). The Supreme Court of Missouri determined, by weighing the evidence it had before it through the same process as *Cole*, that Johnson did not even make a threshold showing.

The Supreme Court of Missouri could have made the exact same decision by simply assuming Johnson met his threshold showing, exactly like the court did in *Cole*, then concluding, on weighing the evidence, that Johnson was competent. The fact that it concluded that Johnson's evidence and argument were so weak as to not even clear the first hurdle cannot be an unreasonable application of federal law when the Court of Appeals for the Eighth Circuit has held the former is not. *Zornes v. Bolin*, 37 F.4th 1411, 1415 (8th Cir. 2022) (explaining that, under § 2254, the federal court evaluates the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision).

Johnson has not shown the Supreme Court of Missouri made an "unreasonable application of" clearly established federal law under § 2254(d)(1) when it determined Johnson failed to demonstrate "the substantial threshold showing of insanity required by *Panetti* and *Ford*." *State ex rel. Johnson v. Vandergriff*, 668 S.W.3d 574, 579 (Mo. banc 2023).[6]

---

[6] Johnson makes the argument that the Supreme Court of Missouri decided the competency issue "based on a record that was intended only to establish the threshold showing necessary." Doc. [3] at 52. He writes passively about the record, so it is unclear who intended it to only establish the threshold. In any event, such an argument did not suffice in *Cole*. *See Cole*, 783 F.3d at 714 (Gruender J., joined by Beam, J., concurring) ("*Panetti* does not clearly establish that a petitioner is entitled to an opportunity to present evidence and argument even if he already has had two such chances."). And, thanks to *Cole*, Johnson was on notice that he should present all the evidence he had.

## Whether the Decision Was Based on an Unreasonable
## Determination of the Facts in Light of the Evidence Presented

Johnson also argues that the Supreme Court of Missouri's decision was based on an unreasonable determination of the facts in light of the evidence before the court. Doc. [3] at 54; *see also* 28 U.S.C. § 2254(d)(2). Like "unreasonable" in the context of an unreasonable application of clearly established federal law, discussed above, "unreasonable" here does not simply mean wrong. Thus, the Supreme Court of Missouri's factual determinations here will not be unreasonable even if this Court "would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Further, a state court's "credibility determinations are owed the same deference as their factual findings." *Grass v. Reitz*, 749 F.3d 738, 744 (8th Cir. 2014). Section 2254 requires that this Court "presume[]" the determination of factual issues the Supreme Court of Missouri made in its decision are "correct." *Id.* at 743 (citing 28 U.S.C. § 2254(e)(1)).

In making its determination, the Supreme Court of Missouri had before it Johnson's medical records, a report from Bhushan Agharkar, who was hired to conduct a psychiatric evaluation of Johnson, and an affidavit of Ashley Skaggs, who has met regularly with Johnson since 2021 to assess his mental health as the institutional chief of mental health where Johnson is incarcerated. In reviewing this evidence, the Supreme Court of Missouri noted that Skagg's affidavit and Johnson's medical records refuted Agharkar's "insistence that Johnson is suffering from hallucinations and delusional beliefs." 668 S.W.3d at 578. Indeed, Skaggs wrote that

---

*See id.* at 716 (Bye, J., dissenting) (lamenting that the Supreme Court of Missouri's process in *Cole* was "particularly egregious" because, since the Supreme Court of Missouri, up until then, had never proceeded in that way, "Cole had no reason to believe he was required to marshal all evidence supporting his lack of competency under the expedited route of a petition for habeas relief"). What is more, Johnson does not identify the evidence he would have brought to the Supreme Court of Missouri in a subsequent hearing but did not bring in his petition, and he "had strong incentives to put forth his best evidence." *See id.* at 714 n.2 (Gruender J., joined by Beam, J., concurring).

during her visits with Johnson, "he has never expressed these kinds of hallucinations or delusional beliefs." *Id.*  As for Johnson's medical records, the court focused on Johnson's *recent* records, like reports from April and May of 2023 that Johnson has been free of auditory hallucinations since taking medication. *Id.* at 579.

The Supreme Court of Missouri ultimately concluded that Agharkar's report was "contrary to the other evidence." *Id.*  It noted that Skaggs's affidavit, which she based on her regular assessments of Johnson's mental health since 2021, did not support the allegations in Agharkar's report, which he "based on a single meeting with Johnson," that Johnson had this type of delusion. *Id.*  This "conflicting evidence weaken[ed] the persuasiveness of Agharkar's report," the court concluded. *Id.*  The court found that "Johnson's evidence lack[ed] credibility, particularly when viewed in light of the State's evidence, to demonstrate a substantial threshold showing of insanity." *Id.*

As for his arguments before this Court, Johnson first makes much of the last sentence in one of the Supreme Court of Missouri's decision's footnotes.  The Supreme Court of Missouri stated that it found "the persuasiveness of Agharkar's report [wa]s significantly weakened by Skaggs's report and Johnson's medical records, which do not include a single mention of the type of delusions that Agharkar alleges." *Id.* at 579 n.7.  The problem, Johnson says, is that his medical records "contain at least 15 mentions of the types of delusions" that Johnson expressed to Agharkar.  Doc. [3] at 54.  But the Supreme Court of Missouri's finding that Johnson's medical records do not contain mention of the same type of delusions "is itself presumed to be correct."  *See Cole*, 783 F.3d at 711.  This dispute boils down to Johnson and the Supreme Court of Missouri disagreeing about the "type of delusions" at issue.[7]

---

[7] Because Johnson has previously been determined competent to stand trial, he faced a presumption of competency. *Cole v. Roper*, 783 F.3d 707, 711 (8th Cir. 2015); *Ford v. Wainwright*, 477 U.S. 399, 426 (1986) (Powell, J.,

Johnson argues his current delusion, which he says precludes his execution, is that Satan is "'using' the State of Missouri to execute [Johnson] in order to bring about the end of the world," and that "the world will be destroyed were [Johnson] to die." Doc. [10] at 137. While the instances to which Johnson points in his medical records involve demons, Satan, the dead, and vampires, Doc. [3] at 56–59, it is not wrong, let alone unreasonable, to say that those instances are not of the same "type of delusions"—delusions that prevent him from rationally understanding why Missouri seeks to execute him. The mere fact that someone experiences delusions does *not* mean that the person experiences the type of delusions that prevent him from rationally understanding why the state seeks to execute him. *See Madison*, 139 S. Ct. at 729 ("[D]elusions come in many shapes and sizes, and not all will interfere with the understanding that the Eighth Amendment requires."). Johnson does not point to any delusion documented in his medical records that prevents him from rationally understanding why Missouri seeks to execute him.

All Johnson's other issues boil down to the credibility of Agharkar and Skaggs and how he believes the Supreme Court of Missouri should have evaluated them. He argues Agharkar is more qualified, more educated, than Skaggs. He calculates that Agharkar, though only meeting with Johnson one time, may have spent just as much time, or even more time, with Johnson than Skaggs did in total throughout her more numerous but briefer visits. Those points undoubtedly are things that could be considered when weighing the persuasiveness of Agharkar's report or

---

concurring) (recognizing that since a "petitioner must have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court," the state "therefore may properly presume that petitioner remains sane at the time sentence is to be carried out"). So, when Johnson points to the same delusions he has been having "for over twenty years," Doc. [3] at 59—delusions he had even as a pretrial detainee, *id.* at 56—he essentially is equating the delusions he had while he was determined to be competent to stand trial, and competent to deliberate under the first-degree murder statute, with the delusions he experiences now. *See also* Doc. [22] at 8 (discussing his "longstanding delusions" that he has "endured over decades"). But if his delusions are the same, he remains competent. Thus, this Court understands the Supreme Court of Missouri's observation to be an unremarkable one, that Johnson's medical records do not mention the type of delusions that would render Johnson incompetent, the type Agharkar alleges Johnson has.

Skaggs's affidavit. But they do not establish that the Supreme Court of Missouri was wrong, let alone that it was objectively unreasonable, when it concluded Johnson's evidence lacked credibility. "Reasonable minds reviewing the record might disagree about [the evidence's] credibility, but on habeas review that does not suffice to supersede the [Supreme Court of Missouri's] credibility determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). That important principle remains true even when, as here, "the state court made its factual findings on a cold record instead of live testimony." *Graham v. Solem*, 728 F.2d 1533, 1541 (8th Cir. 1984) (en banc).

"The presumed correctness of a state court's credibility determinations does not require the court to give a detailed explanation for those determinations." *Robinson v. LaFleur*, 225 F.3d 950, 953 (8th Cir. 2000). The Supreme Court of Missouri provided ample explanation for its credibility determinations. Johnson has failed to show that any of the Supreme Court of Missouri's factual findings were unreasonable in light of the evidence presented to it, let alone that it based its decision on one. 28 U.S.C. § 2254(d)(2).

## CONCLUSION

For these reasons, the Court concludes that Johnson has failed to establish the Supreme Court of Missouri's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or that its decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the Court will deny Johnson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

Because the Court concludes that Johnson has not made a substantial showing of the denial of a constitutional right, the Court will deny a certificate of appealability. 28 U.S.C.

§ 2253(c)(2); *see also* Rules Governing Section 2254 Cases in the United States District Courts 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Johnny A. Johnson's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, Doc. [3], is **DENIED**.

**IT IS FURTHER ORDERED** that the issuance of a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Johnny A. Johnson's Motion for Stay of Execution, Doc. [4], is **DENIED**.

**IT IS FINALLY ORDERED** that Petitioner Johnny A. Johnson's Motion to File Exhibit Under Seal, Doc. [17], is **DENIED**.

Dated this 17th day of July 2023.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE